STORM and others *v.* DAVENPORT and others.

An insolvent debtor, on the eve of making a general assignment, transferred a bond and mortgage in trust for the benefit of certain of his creditors. The bond and mortgage were not payable until about four years thereafter. The transfer contained a proviso, that the assignee should retain the bond and mortgage until the expiration of the period it had to mature, and should not part with it, or attempt to collect the principal, until that time.

*Held,* that the transfer was fraudulent, as against creditors.

*Held,* also, that it being valid against the assignor, it did not pass by his general assignment, made a few days subsequently

The debtor having been declared a bankrupt, pending the suit, it was held that no final decree could be made until the assignee in bankruptcy was made a party.

Sept. 12 ; Sept. 28, 1843.

THE complainants were judgment and execution creditors of Miller & Davenport, and filed their bill to reach the equitable interests and things in action of their debtors.

They charged that an assignment of a bond and mortgage made by Davenport to the defendant, Burke, was fraudulent against them, and they prayed that it should be avoided. The complainants were creditors of Miller & Davenport at the time of the assignment. Other facts are mentioned in the opinion of the court.

*E. S. Van Winkle,* for the complainants, cited *Hyslop* v. *Clark,* (14 J. R. 458 ;) *Austin* v. *Bell,* (20 J. R. 442 ;) *Hart* v. *Crane,* (7 Paige, 37 ;) 2 Rev. Stat. 137, § 1 ; *Osborn* v. *Moss,* (7 J. R. 161 ;) *Van Wyck* v. *Seward,* (18 Wend. 344, 395 ;) *Cunningham* v. *Freeborn,* (11 Wend. 240, 251, and 3 Paige, 557, S. C.)

*F. W. Burke,* for the defendants, cited *Bayard* v. *Hoffman,* (4 J. C. R. 450 ;) *Sands* v. *Hildreth,* (14 J. R. 493 , and 2 J. C. R. 35, S. C.)

THE ASSISTANT VICE-CHANCELLOR.—This is one of the numerous cases, which in endless variety, arise under the

statute against fraudulent conveyances. The defendant Davenport, being in failing circumstances and in truth insolvent, on the seventh day of August, 1841, assigned to the defendant Burke, a bond and mortgage in trust for the benefit of creditors specified in the assignment. The bond and mortgage bore date December 19, 1840, and were given for $5120, with interest annually. The principal was payable to Davenport in five years after its date. The debts which were to be paid by the assignment, amounted to $5130 20, as stated in the schedule annexed.

The assignment, after the transfer of the bond and mortgage, contains an *habendum* to Burke, subject to the trusts and conditions therein contained. It constitutes the assignee, the attorney irrevocable for the collection of the security, and then contains this remarkable clause : " Provided, nevertheless, and " these presents are executed upon this express trust, that the " said bond and mortgage *shall be held* by the said party of the " second part, *until the expiration of the said period of five* " *years* therein mentioned, *and in no case parted with until* " *the expiration of that period.* And also that the said party " of the second part, shall *then and not before*, proceed to col- " lect the principal ;" and after paying the expenses of the trust, it provides that he shall pay the debts specified, in the order in which they were mentioned in the schedule.

A few days after the execution of this assignment, Davenport made a transfer of divers things in action to one Burdett, a creditor, and in September following he made a general assignment to Burdett of all his separate property and effects, in trust for his creditors, and on the same day executed with his partner, Miller, a like assignment of the partnership effects, to one Freeman.

The assignment to Burke is undoubtedly fraudulent and void. It carries on its face, an intent to hinder and delay creditors. (See *Hart* v. *Crane*, 7 Paige's R. 37, per Walworth, Chancellor.)

The circumstance that it was made for the benefit of a part only of the creditors, whose debts are equal to the fund assigned, and who do not complain of the delay thereby imposed ; does not

alter the case. There is nothing to prevent those creditors from pursuing their remedy against other assets of the debtor, and they might by superior vigilance exhaust those assets, leaving the fund set apart by this instrument to remain tied up till the end of the five years, when it would revert to the assignor, or be subject to his disposition.

The effects of an insolvent debtor are by law subject to be sold and applied to the payment of his debts, as fast as the creditors can recover them by regular process. This rule applies as well to things in action, as to goods and lands. And although the law permits the process of a creditor to be interrupted, and even defeated, by a voluntary assignment in trust for all the creditors, yet it will not tolerate in such assignment any restriction or limitation upon the immediate sale or conversion of the property for the benefit of the creditors. Some latitude and discretion is necessarily vested in assignees in this respect; but delay in the conversion of the assets is looked upon with suspicion and distrust; unless explained, it is a badge of fraud, and if such delay be stipulated for in the assignment itself, it is evidence of a fraudulent intent in the execution of the instrument.

It was insisted by the defendants, on the authority of *Bayard* v. *Hoffman*, (4 J. C. R. 450,) that if the assignment to Mr. Burke were fraudulent and void as against creditors, the bond and mortgage passed under Davenport's subsequent general assignment, which is not impeached. This position cannot be sustained.

The conveyance, although void as against creditors, is good against the grantor and his representatives. *Osborne* v. *Moss*, (7 Johns. R. 161.) In that case the fraudulent debtor was dead, and one of his creditors had taken out letters on his estate, and endeavored, for the benefit of the honest creditors, to set aside or contest the judgment which he had confessed for the accomplishment of his fraud ; and it was held that the administrator could not impeach the judgment on that ground.

The same doctrine has been held repeatedly, and the principle is familiar.

So far as *Bayard* v. *Hoffman* bears upon the point, it may

be considered as shaken, if not overruled, by the case of *Mackie* v. *Cairns*, in the Court for the Correction of Errors, (5 Cowen, 547, 571, 585.) There, the fraudulent conveyances made by Cairns to his assignees, were held valid as between him and them, so that the judgment subsequently confessed by him to them constituted no lien.(a)

It was next insisted, that if the assignment is to be avoided, the property passed to the general assignee in bankruptcy. It was admitted as part of the case at the hearing, that Davenport, since the appointment of the receiver in this suit, has made a voluntary application for a discharge from his debts, under the late bankrupt law, and that he has been discharged accordingly. The parties agree that a decree may be made in the same manner as if all proper parties were before the court.

The question raised by the defendants is one between the assignee and the complainants, and it cannot be determined in the absence of the assignee.

It is a rule to which I know of no exception, that if a party in a cause in this court becomes insolvent or bankrupt pending the suit, his assignees must be made parties before the cause can be heard. *Deas* v. *Thorne*, (3 Johns. R. 543,) in the Court for Correction of Errors ; (1 Daniell's Ch. Pr. 254.)(b) It occurred to me at the hearing, that this difficulty might, perhaps, be obviated in this case, by a reference to a master to ascertain the priorities of the claimants of the fund, with a direction to summon the assignee as a claimant ; but on consideration, I am satisfied that such a decree and reference would not bind the assignee.

The cause must stand over, with leave to the complainants to bring in the assignee in bankruptcy by a supplemental bill. As there can be no conflict of interest between the assignee and the complainants in this respect, the assignment in question may be declared void in the decretal order to be entered.(c)

---

(a) See accordingly, *Brownell* v. *Curtis*, (10 Paige, 210, 218 ; reported in 1845.)

(b) So decided in Anon., 10 Paige, 20, and since reported.

(c) The complainants subsequently made the assignee in bankruptcy a party, who claimed the whole fund. The suit was decided against the claim of the official assignee, by the Assistant Vice-Chancellor, in September, 1845.